IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TRAPPERS HOLDINGS, INC., et al., | |
| Plaintiffs, | |
| | **MEMORANDUM  DECISION** |
| vs. | **AND ORDER** |
| MORGAN COUNTY, | Case No. 1:05CV37DAK |
| Defendant. | |

This matter is before the court on Defendant Morgan County's Motion for Summary Judgment and Motion to Strike Affidavit of Bruce Stratford in Part.  The court held a hearing on the motions on October 4, 2005.  At the hearing, Plaintiffs Trappers Holdings, Inc. and Trappers Land LLC ("Trappers") were represented by Richard R. Medsker and Catherine S. Conklin, and Defendant Morgan County was represented by Barton H. Kunz II.  The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties.  The court has further considered the law and facts relevant to the motion.  Now being fully advised, the court enters the following Memorandum Decision and Order granting Morgan County's motion for summary judgment.

## BACKGROUND

In October 2000, Trappers Holdings, Inc. purchased real property in Morgan County commonly known as the Wilkinson Family Farms.  At that time, the area contained several zones–rural residential, agricultural, multiple use, and forest.  This zoning would have allowed the construction of about 250 residential homes.  Trappers chose to develop the property under

the Morgan County Land Use Management Code's ("Code") Master Planned Development Reserve ("MPDR") provisions.

Under the MPDR provisions, development is allowed at the County's discretion "only when it is clearly demonstrated that, in doing so, substantial benefits will be derived by the residents of Morgan County. Morgan County Ordinance § 15.1. The burden rests upon the applicant "to demonstrate that the proposed MPDR is in the best interest of the general health, safety, and welfare of Morgan County residents." *Id.*

The MPDR review process consists of seven steps, comprised of two generalized requirements followed by five bifurcated steps addressing a rezone aspect and a development agreement aspect. Morgan County summarizes the steps as follows: Step 1, a sketch plan and preapplication review; Step 2, joint planning sessions with the planning commission; Step 3, a Master Planned Development Reserve Zone District Application and an MPDR Application; Step 4, planning commission work sessions and public hearings on the rezone and development agreement; Step 5, planning commission recommendations on the rezone and development agreement; Step 6, public hearings before the county council on the rezone and the development agreement; and Step 7, final action by the county council on both the rezone and development agreement. *Id.* § 15.6.

In February 2001, Trappers commenced the MPDR approval process for the property it purchased. Trappers created and submitted materials to support its application, including various maps, analytical materials, general plan interpretations, and development principles and guidelines. Trappers incurred significant costs as it proceeded through the MPDR steps. Trappers's overall project costs exceeded $1.2 million.

On May 29, 2003, the planning commission held a public input session on Trappers's

proposed development and then convened for a meeting to conclude Step 2 of the MPDR process. The commissioners recommended densities ranging between 615 to 1153 and informed Trappers that it was free to proceed to Step 3 of the process.

The Code also provides that any person or entity "adversely affected by a zoning decision may appeal a decision applying the zoning ordinance [to the board of adjustment] by alleging that there is error in any order, requirement, decision, or determination made by an official in the administration, interpretation, or enforcement of the zoning ordinance." *Id.* § 3.2.4.1.

After the meeting, Trappers did not pursue further efforts to develop the property. Trappers claims that it was at Step 3 of the process when the public input and meeting was held. The County, however, claims that the public input and meeting was part of Stage 2 and Trappers never proceeded past Stage 2 of the process. Whether it was Stage 2 or Stage 3, the parties agree that Trappers never obtained a recommendation from the county planning commission, never obtained a denial or approval from the county council, and never appealed any decisions or determinations made by the planning commission. Trappers asserts that it did not appeal any decisions or determinations by the planning commission because no decisions or determinations were ever made.

In January 2004, Gardner Cottonwood LLC submitted a development proposal which was voted on and approved within six months. Trappers claims that this developer submitted the same materials, however, the county denies that they were the same materials. The County also contends that Gardner Cottonwood sought a different type of development than the MPDR.

Trappers initially filed suit in state court alleging various state claims as well as violation of equal protection and substantive due process rights. Trappers claims that the County violated its equal protection rights by treating another developer more favorably in its efforts to develop

the same parcel and that the County violated due process by failing to provide a well-defined procedure for Trappers to follow in gaining approval for its proposed subdivision.  Morgan County removed the case to federal court.

<u>**Defendant Morgan County's Motion For Summary Judgment**</u>

**I.  Federal Causes of Action**

Morgan County argues that Trappers's federal causes of action are unripe and this court lacks jurisdiction to hear the claims.  The United States Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985) explained the application of the ripeness doctrine in the context of land use cases.  The Court held that the plaintiff's claims were premature because they had not sought a variance from the challenged zoning ordinances and had not used available state procedures to obtain just compensation.  *Id.* at 186-97.

The *Williamson County* Court explained that it had "made clear in several recent decisions [that] a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186.  The plaintiff's failure to apply for variances, meant that they failed to obtain a final decision.  *See id.* at 190-94.  The court applied the same analysis to the plaintiff's alternative due process claim to determine that it was also premature.  *See id.* at 199-200.

The Tenth Circuit has applied *Williamson's* finality rule to takings, substantive due process, and equal protection claims in land use cases.  In *Landmark Land Company v. Buchanan*, 974 F.2d 717 (10th Cir. 1989), the court found substantive due process and equal

protection claims unripe because the developer "alleged no efforts to explore the possibility of alternative development plans with the City." *Id.* at 721.  The court held that "the *Williamson County* ripeness test applies with equal force to substantive due process claims" and that it also could not review whether similarly situated landowners were treated dissimilarly without a final decision. *Id.* at 722.

Whether a claim is ripe is a question of law.  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).  However, the ripeness doctrine does not "involve rigid formulas that can be applied with precision and definitiveness."  15 James Wm. Moore, et al., *Moore's Federal Practice – Civil*, § 101.81 (3d ed. 2005).

In this case, the parties dispute what level Trappers reached in the process.  Morgan County argues that Trappers prematurely abandoned the administrative process at Step 2 of the process.  Whereas, Trappers contends that it completed at least Step 3.  It is undisputed, however, that Trappers did not seek review by the Board of Adjustment of any requirement or determination of the Planning Commission.  It is also undisputed that the process did not reach a step that included review by the County Council.  Therefore, Trappers did not complete the administrative process.

Trappers, however, argues that the exhaustion of administrative remedies requirement is moot because there are facts demonstrating that further attempts to obtain a final adjudication would have been futile.  "The so-called 'futility exception' to the final decision requirement . . . excuse[s] the repeated submission of development plans where the submission would be futile." *Eide v. Sarasota County*, 908 F.2d 716, 726 (11th Cir. 1990).  However, no court has articulated a precise test for applying the futility exception.  *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454-55 (9th Cir. 1987), *cert. denied*, 484 U.S. 1043 (1988).

5

In *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340 (1986), the Supreme Court noted that a plaintiff is not obligated to continue to pursue a development application through unfair procedures. *Id.* at 350 n.7. The Federal Circuit has also held that the futility exception exists to protect plaintiffs from being required to submit multiple applications when it is clear that no application will ever be approved. *Howard W. Heck & Assoc., Inc. v. United States*, 134 F.3d 1468, 1472 (Fed. Cir. 1998).

However, the Tenth Circuit has never expressly recognized the futility exception. In *Landmark*, the court referred to the Ninth Circuit's holding. *Landmark Land Co. v. Buchanan*, 874 F.2d 717, 722 (10th Cir. 1989). Following *Landmark*, another district court in Utah has recognized that "the futility exception is not available in the Tenth Circuit 'unless it is clear beyond peradventure that excessive delay in such a final determination [would cause] the present destruction of the property's beneficial use.'" *Anderson v. Alpine City*, 804 F. Supp. 269, 273 (D. Utah 1992). Furthermore, the *Landmark* court observed that "it is clear that the best support of a claim of futility is completion of the steps mandated by *Williamson County* and *Yolo County*: unsuccessful pursuit of either a variance or a proposal for less intense development." *Landmark*, 874 F.2d at 722.

Trappers claims that the futility exception applies in this case because the procedures set forth by the County were vague and arbitrary, it submitted several different sketch plans and applications that were rejected, there is evidence that no application could ever be approved, and there was excessive delay by the County. Specifically, Trappers argues that because there were no set guidelines for moving from one step to another in the process, the County twice forced it to return to the beginning of the procedure without any rational basis. Trappers also contends that it was repeatedly told to meet requirements that were not feasible or required by the MPDR

and, even though it complied with such requests, the County would not bring the proposal to a vote.  Trappers further claims that it was told by the County Council and Planning Commission members that the proposal would never pass.

Throughout the process, however, Trappers did not attempt to get a variance nor did it propose a more limited development.  Trappers argues that the subsequent developer of the property started with an MPDR as well.  But they do not dispute the County's assertion that the approved development for the subsequent developer was a smaller scale development than an MPDR.  Trappers never attempted to use alternate means.

Trappers also has not demonstrated that petitioning the board of adjustment was futile due to unfair procedures.  Although Trappers attacks the process for being vague and claims it was forced to resubmit applications and start over as a result, it never appealed these decisions by the planning commission to the Board of Adjustment.  Trappers failed to utilize the procedures available to it.  Moreover, before asserting in this action that the procedures are unconstitutionally vague on their face, Trappers should have objected to the language of the procedures at the administrative level.  The Board of Adjustment or county council should have had the opportunity to address such issues.

With respect to Trappers claims of excessive delay, the two-year time frame involved in this case does not appear to be excessive in relation to the delay experienced in similar cases.  In *Landmark*, the court recognized that six to eight months of delay was "a strikingly short period of time."  *Id.* at 722.  The delay in other cases in which courts found that the case was not ripe range from sixteen months to eight years.  *See Signature Properties Int'l Ltd. v. City of Edmond*, 310 F.3d 1258, 1267 n.7 (10th Cir. 2002) (sixteen to forty-three month delay); *Williamson*, 473 U.S. at 172 (approximately eight-year delay).

Trappers asserts that this case is most closely analogous to *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496 (9th Cir. 1990).  In *Del Monte*, the court concluded that no further reapplication was necessary to make plaintiff's claim ripe because the plaintiff had substantially fulfilled the express conditions set forth by the City after an extended process.  However, in *Del Monte*, the developer appealed the decision of the Planning Commission twice to the City and it received a final decision by the City.  In this case, Trappers never appealed the determinations of the Planning Commission even though it could have appealed any interpretation or determination made by the Planning Commission to the Board of Adjustments.

Furthermore, Trappers claims that individual council members made statements that led it to believe that its proposal would not be approved.  The statements, however, cannot be construed as the opinion of those bodies as a whole.  The body as a whole told Trappers to continue with its plans.  It is undisputed that Trappers had avenues available to it at the administrative level.  A mere uncertainty as to the end result of their proposal does not constitute a final decision.  There is no evidence indicating that a final decision would not have been made merely because several changes were suggested by the County.  Therefore, the court cannot conclude that further action on the part of Trappers to get approval on its proposal would have been futile.

Because Trappers never obtained a decision from the County on its proposed development, its claims are not ripe for this court to conduct a constitutional review of the process.  Even assuming the lengthy facts Trappers submitted, it is undisputed that Trappers never attempted to appeal any of the County's decisions, determinations, or requirements in administering or interpreting the MPDR provisions to the county board of adjustment or that it was prevented from doing so.  Therefore, neither Trappers's due process or equal protection

claims are ripe.  Accordingly, the court grants Morgan County's Motion for Summary Judgment as to Trappers's federal constitutional claims.

## II.  State Constitutional Claims

Morgan County further argues that Trappers's state constitutional claims should be dismissed for failure to exhaust administrative remedies.  In *Patterson v. American Fork City*, 67 P.3d 466 (Utah 2003), the Utah Supreme Court held that exhaustion requirements apply with equal force to claims brought under provisions of the state constitution as to other claims.  Under Utah Code Ann. § 17-27-1001(1), "[n]o person may challenge in district court a county's land use decision made under this chapter or under the regulation made under authority of this chapter until that person has exhausted all administrative remedies."

As discussed above, the Morgan County Ordinances provide that a developer can appeal the planning commission's interpretations of the procedures or determinations with respect to land use proposals.  Trappers, however, did not file an appeal.  Therefore, it has failed to exhaust the administrative remedies available to it.  The court, therefore, dismisses Trappers's state constitutional claims.

## Morgan County's  Motion to Strike

Trappers submitted the Affidavit of Bruce Stratford in support of its Memorandum in Opposition to Morgan County's Motion for Summary Judgment.  Stratford is a principal of Trappers's organizations.  Morgan County moves to strike portions of the Affidavit under Rule 56(e) of the Federal Rules of Civil Procedure, which provides that "[s]upporting affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matter stated therein." Fed. R. Civ. P. 56(e).

Morgan County contends that several paragraphs in Stratford's Affidavit fail to meet Rule 56(e) standards because they lack foundation, constitute speculation or opinion, assert legal conclusions, or are argumentative.  Statements in affidavits that are vague, conclusory, or lacking in foundation should not be considered.  *See Mitchael v. Intracorp, Inc.*, 179 F>3d 847, 855 n.9 (10th Cir. 1999).  In response to Morgan County's arguments regarding foundation, Trappers submitted a supplemental affidavit from Stratford.  The court finds that the Supplemental Affidavit cures the problems with foundation in the original Affidavit.

Morgan County also moves to strike statements in the Affidavit that are argumentative. Under Rule 56(e) of the Federal Rules of Civil Procedure, affidavits should set forth facts, not arguments.  Stratford's Affidavit states that Trappers was at certain steps in the process, that the code lacked specific guidelines, that Trappers had submitted materials beyond those required by Step 2 of the process and that they were sufficient to commence construction, that the code was vague, and that certain requests by the County were impossible.

Stratford is entitled to state facts even if those facts are used by counsel to make the arguments for the party.  Unless he is viewed as an expert witness, he is not entitled to give his opinion on what should be drawn from those facts.  His belief is not an objective fact, only a subjective belief.  An argumentative statement such as whether a step in the process has been completed is not proper for an Affidavit.  The Affidavit need only contain the facts supporting his belief, from which the parties can make their respective arguments.  To the extent that the Affidavit contains Stratford's subjective beliefs or opinions, those portions are stricken.

Morgan County also claims that Stratford's Affidavit contains several improper legal conclusions which should be stricken.  Affiants are generally precluded from stating legal conclusions.  *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003).  Morgan

County argues that Paragraph 15(a) improperly asserts that the MPDR provisions in the Code is vague, Paragraph 19 improperly asserts that the remaining three issues the County wished to have addressed did not constitute a legal basis for refusing to go forward with the MPDR process, and Paragraph 30 improperly asserts that Trappers had no decision that could be appealed.

Trappers admits that the statement in Paragraph 19 that the County did not have a legal basis for continuing to go forward with the process is a legal conclusion and can be stricken from the Affidavit.   As to the remaining claims that the Affidavit contains improper legal conclusions, Trappers asserts that whether the code is vague and whether Trappers received a final decision are statements of fact.   The court disagrees.   Whether the code is vague and whether an appeal could have been taken are conclusions that the court must make.   *Dodger's Bar & Grill v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1443 (10th Cir. 1994) (whether a statute is vague is a question of law).   Counsel may offer arguments on such issues based on underlying facts supplied by an Affidavit, but the Affiant cannot make legal conclusions.   To the extent that Stratford's Affidavit contains such legal conclusions, they are stricken.

Finally, Morgan County claims that several paragraphs contain impermissible speculation.   Rule 56(e) requires affidavits to "be made on personal knowledge."   However, Paragraph 10 improperly speculates that the County did not know how the MPDR process was to go forward, and Paragraph 21 improperly speculates that the County set the requirements in order to stop Trappers's project.

Trappers argues that most of them are based on Stratford's personal involvement in the MPDR process and his perceptions.   Stratford can state facts that may support inferences as to the County's motive.   However, he is not in a position to opine as to the County's motives.

11

Stratford's statements in this regard are speculative and argumentative.  Therefore, the court strikes these statements.

### CONCLUSION

Based on the above reasoning, Defendant Morgan County's Motion for Summary Judgment GRANTED and its Motion to Strike is GRANTED IN PART and DENIED IN PART. Accordingly, Plaintiff's case is dismissed, each party to bear its own costs.

DATED this 28th day of October, 2005.

DALE A. KIMBALL
United States District Judge